Good morning. May it please the court. Summary judgment against Mr. Halle was improper because there are genuine disputes about the facts. Number one, Halle was not subject to the authority, direction, and control of the master aboard a vessel. Compare the company's statements with Halle's. The company's operation manager, Shane Lincoln, said, quote, Halle reported to the captain of the vessel. As part of their job duties, ROV operators, including Halle, would communicate to the captain about navigational issues as they navigated the ROVs and observed the underwater conditions, end quote. But Halle said, quote, I did not report to the ROV support vessel captain. I was subject to a chain of command separate and apart from vessel command. I always reported to the operations coordinator for CI who was Shane Lincoln, the operations manager, who were land-based. Although Halle did take a few seconds out of his 84-hour work week to relay GPS coordinates to the customer, from the customer to the captain by radio, or point to a location on a chart, he had nothing to do with the support vessel's navigation. Is your position there suggesting that he may have had significant impact on the operation and navigation of the vessel, but it was less than 20% of his time, so not substantial navigational role? Or is it that he's out of category altogether? I think he's out of the category of navigating the boat altogether. The reason why I pointed that out is because he has to be, to be a seaman under the FOSA, he has to be subject to authority, direction, and control of the master board of the vessel. And his only interaction with the captain is to relay a GPS coordinate. And that is both things. It's such a small duty in any real sense of navigating the boat. Just letting the captain know where they're headed, I don't think is... It seemed like by the time you all got to rehearing, Judge Fallon was sort of laser-like on our coffin decision. So when he says, and I'm quoting, the ROV vessel had to be positioned close enough for the ROV cable to reach underwater target. Accordingly, Halle would let the captain know where they needed to be. That sounds very like the language he cited from our 2014 coffin decision, which is that his role integrated with the safe operation of the ship. And I thought of it as, you know, wherever that cable and ROV goes, the ship has to go. It's like a tow line. And in that sense, it would, everything he does would be in aid of navigating that support vessel. No? I don't, I think there's an important distinction with the, with Coffin versus Blessee. And that just don't exist here that are critical. The first one is the tanker men in that case were actually members of the vessel's crew. And the parties agreed that the tanker men were subject to the master. The tanker men also shared 19 deckhand duties. In other words, they were directly responsible. The verb that Judge Jolly used in that case, to integrate with the safe navigation, integrate with, I towards, that's more expansive. So shell fishermen, totally different. You know, they're just being transported. Then you have the cooks and Judge Wisdom's decision. If they're cooks for the seamen, then they would be, but if they're not sort of like the land offloader on loaders, but then these guys, these guys are closer by virtue of the fact that what they do makes the vessel go in the direction they're submersible goes. Well, you know, I think that it's important to look at the seismic technicians, seismic technicians, seismic technicians are going to have the same issue. They're, they get over time and they, they, they're towing the microphones. They're also operating. What's your best case on that? You're right. That seems somewhat analogous to me. What's the case on seismic technicians? That's the Marsh, there's the Marshall versus Woods Hole oceanographic, um, four 58 F sub 709. And that's in your brief. It is Marshall versus Woods Hole. And those are seismic technicians. So again, those things are not severable. It's not like a helicopter going in or diver. They're connected and they are not seat. Right. Yeah. I mean, no, they're, yeah, they're absolutely it's a similar situation. Yeah. All right. And that's a good point. I mean, you could operate an R an ROV from a helicopter. I mean, I don't, I'm not aware that they are, but they don't have to be on a boat. I think that's an important distinction is that there are people who live, work, eat, sleep on boats. Right. But not all of them are, are seamen under the FOSAs definition. And, you know, we talked about cooks, seismic technicians, dredge, some cook, right. Some cooks, it depends who they cook for. Right. Exactly. Right. Okay. So, so that gets to what, you know, the district court thinks that it's difficult to separate the command of the support vessel from the plaintiff's command of the ROV. And it said that while . . . go ahead, Judge. No, I was going to say, did the court, in determining the standards of how you determine if someone's a seaman or not, it seemed like the first time there was some confusion, came back, looked at different standards. Did it correct itself? Did it use the right standards and criteria in making that determination? Actually, no, Judge. And that's an important point I was just getting to. See, see, what the court said is, this is a direct quote, while Holly may not be directly subject to the authority, direction, and control of the master of the support vessel, the mission of the support vessel is wholly tied to the mission of the ROV. And the mission and operation of the ROV is directed by Holly. That's what he said. Now, look at the Jones Act standard. Stone, Jones Act standard for seamen is, is broad. It's supposed to cover everyone who's on the surface of a ship. It's supposed to cover those who contribute to the function of the vessel or, get this, the accomplishment of its mission. And so when Judge is saying that it covers, that the seaman exemption or the FOSA is covering someone because they contribute to the mission of the vessel, he's applying an expansive Jones Act definition. It comes from that appurtenance doctrine that he's inserting into the exemption, which broadly expands it. The Jones Act is different. It covers those who do the ship's work, provided they have a substantial connection to the vessel and navigation. He corrected that by the rehearing, it looked like. He's asking you, what's the scholarship on divers? I mean, he's at that point really asking the question, are they aiding navigation? It seemed to me that at that point, you all and the judge had gotten the focus on coffin, which is not a Jones Act case. That's an FLSA case. Right. But what I just read to you about him focusing on, on Holly contributing to the mission of the vessel, that's the part that's wrong. That's the Jones Act part. It's not just the mission-based standard. That's what he's doing. But we, we may be more at fault than he, because the live, live, eat, sleep, that, that was in coffin. It is, but that's not the reason why the court went that way. There's lots of people that live, eat and sleep on boats, right? But it, it, the second prong, the second prong of what the coffin versus blessing said are those who, it talks about those who offer the service that are rendered primarily as an aid in the operation of the vessels, means of transportation. There's that in the court said that just means that the employee must be a more or less full-time member of the mayor of the Marine crew. That is, and this is the important part, the crew that is responsible for operating the ship. Okay. Now there, the company would have us believe that he's actually operating the ship, but the ROV itself is not part of the ship. So there's a, there's a definite, there was a second declaration from Shane Lincoln. And he doesn't allege the ROV is a permanent fixture on the vessel that affects the vessel's navigation because it doesn't. Instead, he alleges they are attached, the ROVs are attached by cables to an ROV system that is permanently welded to the vessel. And this ROV system, including the handling system, the A-frame, the hydraulic unit, that, all that is the ROV system, not the ROVs themselves. And those are the ROV, the ROV system is a part that's allegedly inspected by the engineers that forms the long-term installation on the vessel. But the company didn't say that Holley worked on that permanently installed part. He, the ROVs themselves are not permanently installed. Holley unequivocally testified that his duties were solely dedicated to the ROVs, not the ROVs themselves. I have a question about the first requirement under the direction of a master. He clearly wasn't in the chain of command, but, you know, if something goes wrong, there's a hazard. I'm sure he's going to follow the captain's directions. What cases, are there any cases from us that have found the first requirement not met by someone who is on board the vessel, like your client? I couldn't find any. But I think it's very important that he's not taking orders from the captain. I'm sorry, could you repeat that question? He's taking orders from a land-based... I was asking if any, what case law has found the first requirement not met under the direction of a master by someone who's actually on the vessel, who's vessel-based, like this client? Most cases, from what I can tell, it's not challenged or it's agreed to. Coffin vs. Bless is agreed to. And, you know, this is a different situation. He, Holley has a job that he performs from a boat, but he doesn't do the work of the boat. But isn't anyone on the vessel under the direction of the captain in the case of hazards? I mean, if your client were getting in fights or showing up drunk, I'm sure the captain's going to take control of that situation. Look, I think if there's something like that, it could be. But I think that's like a lot of job situations where you may be at a client's location and you're going to have to listen to the person whose location it is. But the rule of saying everyone on the boat is subject to the master is like saying everyone on a boat is exempt from overtime, and that's not standard. It's easy for us to think, you know, the shellfish harvesters back to 1946 that are being transported on it, not. Or the offloaders, onloaders at the land, not. But these people are so much more integrated into the vessel's operation. And the whole vessel exists to guide these things. But that's the mission standard. And that's, look, if the Jones Act is going to be construed broadly. But the cooks, the cooks that cook for the seamen are supporting a mission. They absolutely are. And they are connected and part of that mission, too. So are the seismic technicians and some of the dredge operators, depending on which ones they were, lived, ate, and were on the... Seismic case, that's a circuit decision? I should have read it. No, it's a district decision. Okay. And there's another one out there. I just don't have that citation handy. But there's another seismic technician case. There's two of them. So, no, it's a little different deal. What was I going to tell you, Judge? There's something that came up. Oh, about being integrated as part of the boat. See, in my mind, if the Jones Act has meaning to be broad, right, we have to find a way to distinguish. It's not going to be everybody that's a Jones Act seaman is going to... How about this as a test? If you can remove the individual, the worker, from the boat and it doesn't affect the navigation of the vessel, then they necessarily are not seamen. Is that a... Well, I think that would mess up the situation. No, that would probably work for you, right? You'd win. I'm sorry, Judge. Let me try that again. Let me see if I can understand what you're saying. In other words, you're saying this guy operates a tool that happens to be on the boat. Yes. And so, therefore, you take him and his tool off, the boat's still going to be able to sail around. Oh, absolutely. But you take the cooks that feed the seamen off and the boat won't be able to go around and won't have a crew. Right. The way I was thinking about it is that the people that are exempt are those whose job is the boat or supporting those whose job is the boat. Yeah. Right. I mean, because if you're navigating it and steering it, upkeeping it, maintaining it, those are the people that are exempt. But a janitor that's cleaning it all up, he'd be exempt too, right? Well, that's where the cases have gone because his job is the boat. Right? I mean, he's maintaining upkeeping the boat. And no one says these submersibles are boats themselves? That's not an issue in this case? I don't think they are because there's a definition about what's a vessel and that hasn't been argued by anyone. I know it hasn't. The vessel has to be capable or practically capable of carrying things or people across the water. And that's not what the ROV does. The ROV is just like an arm or an extension. He's doing industrial type work. It's kind of like the guys who service these offshore wells. Right? They're on a boat and their primary duty is to service wells, not to be working for the boat. So if you have a boat with a crane, the crane operator on the boat, not covered? I would say that he should be entitled to overtime because his work isn't the work of the boat if he's not having to actually upkeep and maintain it. So in this case, other than running the ROV, did he have other responsibilities while on the boat? No. He testifies that his work is solely dedicated to ROVs. And the ROVs are just, I mean, it's like having a hand that can extend underwater and turn a valve for you, connect a line underwater, you know, inspect a structure. It's industrial work. It's not work related to moving the boat and navigating the boat or upkeeping the boat. He has a job from the boat that he does from a boat, but it's not critical to making the boat go or keeping the boat in shape. But he does have some responsibility to tell the captain of the boat where to go. Right. I mean, I think he sort of has an intercom function. Someone tells him, hey, these are the coordinates we're headed to. And he lets the, you know, he can relay that to the captain, takes a few seconds out of his 84 hour week. And then he's, that's it. That's all he's done. He's not navigating, he's not figuring out how to get there. You know, he's in a windowless shipping container. He can't even see what the weather's like. He can't see what's going on on the surface at all. All he's doing is he has a computer screen and joysticks and he's guiding that ROV to go turn a valve. That's what he does. How is your position consistent with what Coffin and other cases have said is the purpose of exempting seamen, which is the fact that, you know, vessels are confined places and you can't really increase employment. Right. I mean, the overtime rules are intended in part to increase employment because employers don't want to pay the overtime. But on these small vessels, you can't hire additional people. So it seems to me it's a bit at odds with the purpose of the seaman exemption to say this ROV operator should get overtime. Well, Walling versus W.D. Hayden talks about that and talks about how that can be inconvenient. But, you know, I think the thing to recognize here is that basically what it is, is the high rent problem. It's not an exemption to the FOSA because you have a high rent. I mean, if you if you could hire more people to reduce the overtime in your office in Manhattan, but you can't because it's just too expensive to get another office. That's not an excuse. Right. It can be inconvenient sometimes to have to pay the overtime instead of bringing in more people. And it's very inconvenient on a boat. But Walling versus W.D. Hayden mentions the fact that that's the law. Sometimes it's not convenient for the employer. Sometimes it's not even convenient for the employee. How many ROV operators are on this support vessel? Just your client or does he have a team of people? There's a it's it's a group. And I don't know the exact number. I I don't know if it's more than two. OK, thank you, Mr. Molton. You still have five minutes. Thank you for rebuttal. Mr. Roberts. Good morning and may it please the court. My name is Mary Jo Roberts and I represent Galliano Marine Service LLC and C Innovation LLC, the appellee's defendants in this matter. We respectfully request that this court affirm the decision of the district court concluding that the plaintiff, Kyle Haley, was a seaman as contemplated by the Fair Labor Standards Act and therefore exempt from the overtime protections of the FLSA. To put things in context, your honor, I'd like to start with what this case is not about. It's not about a land just a little bit. Sorry. It's not about a land based employee. Is that better? An employee who split his time between the vessel and land. Rather, it involves a former employee who spent all of his working time aboard a vessel where he lived, worked, slept and ate as the vessel traveled offshore. This is not about a nine to five type job where the employee returned home daily, but rather it involves a former employee who worked on hitches of four weeks on and four to two weeks off and who earned in excess of one hundred and twenty five thousand dollars each year for working approximately half of the year. You would agree the law seems to be if you're just being transported on it to do work and he's given he's cited that seismic case, a diver, a helicopter or shelf harvester. We would not say those folks are seaman. Well, that's that's perfect. Let's go right to that case, your honor. He mentioned the Marshall versus Woods Hole Oceanographic case. I'd like to point out that that's a case by the district court, but in Massachusetts. So that's not binding on this court at all. Nevertheless, I was an oceanographic researcher and the court did find that they were not seaman. But as the district court pointed out under there are regulations under the Jones Act, which is not FLSA, but under the Jones Act, those oceanographic people are directly written out of the Jones Act. And as you all know, the Jones Act is a lesser threshold. So if one is not able to meet the Jones Act standard, it's unlikely that he would be able to meet the standard under the FLSA. Likewise, he also mentioned dredge workers. That's under the Sternberg case in the Walling versus W.H. Haddon case where the dredgemen were not found to be seaman. That's directly written out by the FLSA itself. If you look at 29 CFR 78334, employees on floating equipment who are engaged in the construction of docks, levees and employees engaged in dredging operations are not  if it's so clear, why would they have to put it in the statute? If ROV operators were exempted under the statute, Your Honor, we would not be here. But that's not the case. So reliance, in my opinion, on the seismic technicians which are written out of the Jones Act, which is a lesser threshold and reliance on the dredgemen authority when that's expressly written out of the FLSA is misplaced. There are points of distinction, and I haven't thought that through enough. Judge Fallon, who, of course, knows this area of law well, he nonetheless followed our language, it seemed to me, when he made his dispositive finding, saying that this fellow's work affected the safe navigation of the vessel. And we use that same word safe and coffin, but that's maybe expanded where the law had gone, Judge Wisdom, Judge Garwood in the earlier cases. So because anybody's work, like the cooks or anybody could, if they do their job You're right in the sense it could. But in this case, Your Honor, the operation of the vessel, this was the name of the vessel was on as an ROV support vessel. Its sole purpose is to support the ROV. So the mission of the ROV and the mission of the ROV support vessel are intertwined. It was also attached to the ROV support vessel. But his point is mission maybe we misled by using that because we're looking at the character of the work, not the vessel's mission. Are you disagree with that? I disagree with it. I think coffin was appropriate. And, you know, we are following, as the district court did, the court's authority in coffin. I think it's appropriate. Cooks, you mentioned cooks. They are just simply cooking and not directing or navigating anything. And yet they can still be effluently a seaman under the law. This person, Haley, was actually navigating, operating and maintaining the ROV support vessel, which was attached to the ROV. That's essentially, you know, in line with the purpose of the FLSA, I believe, Your Honor. The tugboat operator that's pulling with a tow line, would he be a seaman of the boat that he's pulling? In coffin, that was actually a unit tow. So you had the towboat and it was pushing two barges. The people that this court found to be seaman, the tanker men, they were actually unloading and unloading and unloading cargo from those barges that were being pushed. And nevertheless, this court found them to be seaman. They ate, they slept, they lived on the towboat, they worked on the towboat. Nevertheless, the court still found that they were seaman. And so loading and unloading cargo, Your Honors, can be seaman's work. We present that navigating and operating ROV should also be seaman's work under the FLSA. In coffin, they took orders from the captain. The captain told the tanker men what to do. Is that correct? That is correct, Your Honor. In our situation, was that the same? Did Mr. Haley take orders from the captain? It was communication from Mr. Haley to the captain, Your Honor. He had to communicate regarding navigational issues and any underwater conditions that he saw. He mentioned that he was in a container. However, there's also testimony that there's video feed so he could actually see. That's how he navigates. He could see the conditions in the water and he had to communicate to the captain about that. And also, he represented in his declaration that he was subject to the navigational directions of the captain. The captain was making the call at the end of the day. The captain was in control and the captain made the determinations as to where the ROV vessel was going to go. So, yes, he was under the direction and authority of the captain, Your Honor. But his direction and command was on the land, correct? The people he reported to were. His report is due, but I don't think there's any requirement, at least none that I've saw, that requires that there be a direct reporting. The question I asked the other side, what is the best case law on that first requirement? Most of the cases seem to come analyze the second requirement. Honestly, it doesn't seem to be very much litigated. A lot of times, as in the coffin case, if someone is doing basic maintenance on a vessel that's deemed to be almost always seaman work. And here he was maintaining and operating the ROV unit. So that's in line with almost always being FLSA seaman work. And I have not found that to be very well litigated, at least in the cases that I reviewed, Your Honor. Did he have any other duties outside of running the ROV? ROV, that's the key. The ROV was what he did. He operated, he maintained it, and he navigated it. And the ROVs that he operated were attached to the ROV support vessel. So that's a key argument that we have, Your Honor. Wouldn't we at minimum be in a situation like, you know this law well, so what's the one where Judge Wisdom wrote it and we had to remand because we weren't sure about the percentage time? I don't think so, Your Honor. Um, a couple of things. I don't think you need to remand it for more evidence. The essential facts, Your Honor, are not in dispute. Haley admits that all he did was navigate, support, maintain the ROV. We accept that. I thought the record said the amount of time that he's actually sending GPS coordinates was very small. That's when it's affecting the navigation of the ship. Your Honor, we contend that all times when he's navigating, supporting, and maintaining the ROV, that's part of his duties. And as I said, basic maintenance of a vessel is almost always FLSA, FLSA seaman work. So, Your Honor, I submit that you do not need to remand it, that his duties were in, uh, were FLSA seaman duties and you do not need to remand it. It's not in dispute. We think the only duties in aid of navigation were giving the GPS coordinates to the captain. Then what should we do? Well, Your Honor, respectfully, I know you disagree with that, but assuming that's what we think is the only part that meets that second, well, a couple of things, there's the definition, um, for that first prong reads, we focus a lot, I'm sorry, on the direction, authority, and control. However, that is not the only way to get it. The district court also found, and I'll quote for the district court, Another way that you can become or meet the first prong is being a master, performing as a master. And the district court, in essence, in that language, the mission of the ROV support vessel is wholly tied to the mission of the ROV, in essence, found that Haley was performing as a master of his own ROV. So there's two ways to meet that prong. Yes, you can have the direction, the control, the navigation, or you yourself can be performing as a master. So another way around that, Your Honor, essentially it's functioning as a vessel. He's, he's a master of his own little vessel, which was of course attached to the ROV, which is a vessel. So even if you don't believe that the ROV was a vessel, it was attached to something that is, and he's navigating that. So there's two ways to get to that prong. But your position is that the ROV is a vessel? The ROV is attached to the support vessel, which is a vessel. So it's a part of a vessel. And in a sense, it's a vessel. And, but did you make that argument to Judge Fallon? We did make the argument that we made the argument that it was attached to the vessel and therefore part and parcel of the vessel, which he then seized on. He seized on, and then he decided that issue. I don't see much FLSA law that uses that word of pertinence. May be helpful, but, but you just made a point that I, you heard me asking opposing counsel about, and I didn't see it in the case, but it intrigued me. Would the ROV itself be a vessel? We didn't directly make that argument, but perhaps it's just a little linguistic difference, Your Honor, because we're arguing that the ROV was attached to the vessel, the ROV support vessel. So it's part of the vessel. True. So it's, so in essence, it is a vessel by its virtue of being part of the vessel. We didn't make the argument that its own, its own separate vessel, but I don't think you need to make that argument to get to the end result, Your Honors. If we think the second inquiry, whether the plaintiff's work was primarily in aid of navigation is a close question. In terms of a tiebreaker, why shouldn't we remand given that this is summary judgment and this is an exemption on which you bear the burden of proof. And it's an exemption that the case law says should be construed narrowly. Your Honor, I actually, I think the second argument was one that the district court found to be, to be clearly met. And we agree with him. The district court held that the ROV directly impacts the vessel as a means of transportation. The ROV is attached to the vessel and therefore the vessel travels as needed to support the ROV. It's supported by the evidence in this case, Your Honor. Haley provided testimony that he had to relay the GPS coordinates to the support  location preferences to the captain. We provided summary judgment evidence that Haley communicated with the captain about navigational issues as he navigated throughout through the water in the ROV and observed underwater conditions. We also provided summary judgment evidence that the ROV support vessel's purpose was as a means of transportation for the attached ROVs. Therefore, Your Honors, the undisputed summary judgment evidence results in the conclusion that Haley's service to the ROV, which was attached again to the ROV support vessel, satisfied the second prong of the seaman exemption. And that, Your Honor, you know, we rely heavily on Coffin because we believe it's on all points in this case. In Coffin, as I said, the configuration was a unit tow. So you had the towboat with the navigational controls and the propulsion system, and it was pushing the two barges throughout the waterways. The tanker men maintained that the barges, they maintained the barges and they unloaded and loaded the barges and the tanker men were assigned to a particular towboat. The tanker men ate, slept, lived, and worked aboard the towboats. And despite the fact that they were working on the barges rather than the towboats, this court found that the tanker men were engaged in FLSA seaman work. So if you have someone that's loading, unloading barges, Your Honor, and you found that to be FLSA seaman work, we submit to you that an ROV unit that's attached to the ROV support vessel and he's navigating it, he's maintaining it that that should also fall squarely within the FLSA exemption. I'd also like to point out that the language in Coffin, this court held that quote, the use of the word ordinarily in the statute evidence is that the FLSA eschews a fixed meaning of the term seaman. The regulation emphasizes quote, flexibility, indicating the term's meaning is governed by the context in which it is used and the purpose in the statute of which it is found. Therefore, we must evaluate an employee's duties based upon the character of the work he actually performs and not on what it is called or the place where it is performed. And the whole FLSA is pervaded by the idea that what each employee actually does is determining its application to him. So the plaintiff in his opposition memorandum conceded that the basic maintenance of a vessel is almost always seaman's work under the FLSA. And this language is from this court's decision in Coffin. The plaintiff stated that he maintained the ROVs and the plaintiff has not challenged the fact that the ROV was attached to and in a pertinence of the ROV support vessel. The ROV, the plaintiff's work, sorry. Are we the only circuit that seems to have had a 50 year span interpreting this? I mean, ours is involved with, you know, some prominent jurists on our court. What's what's what is there any helpful circuit decision with respect to ROVs Well, not, I guess you're not going to see ROVs. It's like drone folks. They're all pretty recent. But is there anything that gives light on whether what I see as a slightly broadened definition in Coffin may be favorable to your position is one that other circuits embrace? I have not seen that, Your Honor. We try to focus predominantly on the fifth circuit, but the fifth circuit's ruling in Coffin is also consistent with its ruling in the Gale case, which was decided I think in the 1940s or 50s. Same thing with the barge tenders and the court found them to be FLSA exemption. So the Coffin was essentially an extension of the Gale case that had previously been decided, Your Honor. What about law review articles? I mean, the bar on this area is pretty vigorous. Have you found anything? We have not. We're splitting hairs here. We are, Your Honor, but it's an advancement in technologies. ROVs are, you know, relatively new. What about that proposed rule I pulled up, which is if you can take the person and their work off the vessel and the vessel still can navigate, then they wouldn't be seamen? That I don't think would work because the example of the cook that you gave, you can take the oven. Although I don't want to sound absurd, but if you take the cooks away. Well, you know, if you take the ovens and their equipment and everything away, people can still, I've functioned many years without an oven, Your Honor. So people can take, they can make their sandwiches. They can, so there's still a way around it. The whole purpose of the ROV support vessel, that's the name of it, is to support the ROV. You take the ROV off of it. You no longer have an ROV support vessel. If it's a purpose question, it seems to me you're, you're, you're, you win. But, but there's some strong competing language that it isn't a mission purpose test. It's a work focus test. You're correct that the duties are important component. And that's why I focus on the fact that, yes, he's navigating and he's But the ROV is attached to the ROV support vessel. So his duties are to the ROV support vessel as a whole. And yes, that is essentially, basically FLSA seamen duties. And I feel that that should fall in line with this court's determination in Coffin as well as in the Gale decision as well, Your Honor. And there was also mention of the policy considerations in this case. I find them to be in line, Your Honor, at the time that the FLSA was drafted, it originally did not include an exemption for seamen. And labor organizations representing seamen argued that that needed to be included. And it was. The general policy of the FLSA is premised on the belief that the work of the employees could not be easily spread to other workers after 40 hour work week. And that exempt employees typically earn salaries well above minimum wage. Those considerations are present in this case, Your Honor. With a respect to the inability to spread work, it must be remembered that the ROV support vessel traveled offshore for about a month at a time. And the defendant presented summary judgment evidence that the ROV support vessels have limited spacing for living quarters, eating quarters, and the like. So the crew capacity was limited by necessity. Therefore, due to the limited crew and long periods of time offshore, it was not possible to spread this work to other employees at all, Your Honor. And with respect to compensation, defendant presented summary judgment evidence that in keeping with the general policy. Did Gary's affidavit say he wasn't a member of the crew? And by contrast, did the crew also say that they saw him as a passenger? If those are true, are they irrelevant? I think that's completely irrelevant, Your Honor. That goes to the authority that I cited earlier. If he was called, you know, third party, if he was called passenger, that's not determinative. What you look to is not the name, but what the duties are. For example, if we had called him an FLSA— Everybody himself agrees? Even if everybody called him that, Your Honor. For example, if we had called him an FLSA seaman, would we then be exempt because we called him an FLSA seaman? Those types of labels and names are not determinative. What this court has to look at is the actual duties. But it's not a label. It also—I mean, the duties are the second part. But I go back to that first part, which is whether he's under the control of the master. The fact that he's not a member of the crew does seem to implicate that standard. There's just not a lot of case law fleshing that out. There's not a lot of case law. And he did have to report—use the word report—he had to communicate to the captain. That is very clear, and that's undisputed. And if you think about it, Your Honor, he probably had a lot more communication than a cook who was cooking for the seaman. A cook most likely is not going to go directly to the captain and ask him about the menu. He goes through the line and chain of command of a steward. Here, he's actually interacting directly with the captain. There's no authority that I've found that says that you have to be under the direct command of the captain. You can still have that chain of command. And ultimately, the captain was making the calls, Your Honor. And secondly, even if you are stuck on that particular prong, as I pointed out, you can still get there by saying that he was the master of his own vessel. Silly question. What's the movie with Tom Hanks and the pirates in Somalia? You know the one with the freighter and the pirates come out? I don't know. Well, I'm thinking because the critical scene is the snipers on the U.S. ship. Yes. Would a sniper be a seaman? He's protecting the safety of the ship. I don't know, Your Honor. I don't know. Your theory? If they carry a sort of a rappel-the-border guy. I don't know if a sniper would be a seaman under the FLSA. You had so many answers. I apologize. I'm so focused. Is Tom Hanks an actor or a seaman? I'm sorry, Your Honor. Thank you so much. I'd like to address a couple of things. You know the name of the movie. I'm sorry? You know the name of the movie. I don't know the name of this movie. Captain Phillips, as Judge Costa says. That's why we're judges and y'all aren't. Okay, the authority that a seaman has to be subject to the authority, direction, and control is written right in the regulations. Subject to authority, direction, and control of the master. That's the first prong Judge Costa's been focusing on. It didn't seem like that got much attention in front of Judge Fallon. Is there less developed law on that? Right, there aren't cases on this. Most people either agree or it's uncontested and we've briefed it all the way through. Now, I want you to think about this. Subject to authority, direction, and control. You see language like that in other places in the FSA, in the employer context, right? Yeah. If you're subject to someone's authority, direction, and control, then that person is your employer. And no one's going to say the captain of the boat was Holly's employer because he wasn't subject to the authority, direction, and control of the captain. I guess maybe there's not developed law because I thought really sort of at sea everybody on a vessel reports to a captain. No matter who it is, that captain is in charge. Right. I think that's analogous to just like working on anybody's third-party location. If you work on an oil rig and there's a company man there, the company man says, hey, that's not right. You're going to have to do it, right? But that doesn't mean he's your boss. It doesn't mean you work under his authority, direction, and control. That's a different thing. And that's the reason why- Am I under the direction of a captain? Does the captain tell me when to abandon ship? Am I supposed to follow that if I'm just on a cruise? I think you have to, but you're not working under his authority, direction, and control. He's not your boss. But he does have some control over everyone on the ship. I think he has to. I mean, I think that's just the reality. And that's just true of anybody that works on a third-party location. Where do you think Judge Fallon, if he made a mistake, where do you think- Was it a legal mistake? Was it a factual dispute gray area mistake? Judge, he wrestled with this a lot. He did. And I have a lot of respect for him. And I can understand how a judge who's always looking at the Jones Act might not get this quite right. And so I think it's a combination, Judge. I think he just ignores the fact issue and implies the Jones Act view of this. But he shifted off that. I mean, I think by rehearing, you'd redirected him. I don't think so. Because I think he says it's- He's in charge of the ROV. Therefore, he's exempt. But that's classic Jones Act, right? That's not the FOSA, which is going to focus on his duties towards the vessel. Okay. Now, my colleague brought up this issue, the dredge workers. And that's being written out in the regs. Well, the reason why the dredge workers are written out in the regs is because there was a case on it, right? That's how those regs got written. Are the seismic folks written out of the regs, in the regs? Under the Jones Act, the seismic technicians, there's a specific regulation that says that they're not Jones Act seamen. But if you were to apply just the normal situation, where they contribute to the mission of the vessel, and they have a substantial connection to the vessel, they're exposed to the perils of the sea, they would clearly be Jones Act seamen, but for this reg, right? But they are also entitled to overtime. You dispute her comment that legally, the fact that he thought of himself as a passenger, and the crew thought of him as a passenger is irrelevant to our inquiry? I don't think it's irrelevant. Now, I think it's correct that the label doesn't matter. But I think this helps explain the fact that he's not part of the crew, that he's not subject to the captain. Thanks. He talks about his duties. It's not just a label, it's the duties, right? He talks about he has no duties with respect to the boat.  He doesn't do crew things. Sorry, go ahead, Judge. If we accept your argument that the trial court got confused between the two different standards and maybe commingled the standards, and we're not sure, if we accept that argument, what are we supposed to do? Do we go back and independently look at what's before the record and make a ruling, or we remand it back for consideration by the district court using the appropriate standards, if we accept your argument? Well, I think the appeals court looks at it de novo and makes its own ruling. That's my understanding. So there was something else, Judge, I wanted to bring up. Oh, plainly and unmistakably. These exemptions have to be construed plainly and unmistakably and narrowly construed. So in an FOSA case, if it's close, the ball goes to the runner, right? It goes in favor of finding that someone should be entitled to overtime. And so if it's not plainly and unmistakable at this point, then I think it's appropriate the case should proceed and go, to be developed more and go to trial. When you say, use that phrase, that's from our case law? Plainly and unmistakably. From the Supreme Court. Plainly and unmistakably. I'm going to get you that. No, let me get you that, Judge. It's A.H. Phillips, Inc. versus Walling. That's the original case and it's been cited several times. Oh, the 1946? Yes. Yes, it was so good the first time. Did you say Phillips? Not the same one in the movie. Not the different Phillips. Okay, thank you. Thank you. Thank you, Judge.